*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER ALAN RICE,

Defendant-Appellant.

UNPUBLISHED
August 11, 2026
9:42 AM

No. 367258
Berrien Circuit Court
LC No. 2022-003734-FH

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Defendant, Christopher Alan Rice, appeals by right his jury-trial convictions of first-degree home invasion, MCL 750.110a(2), and assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 65 months to 30 years' imprisonment for the first-degree home-invasion conviction and 20 months to 15 years' imprisonment for the AWIGBH conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from an incident on the night of November 2, 2022, in which defendant and codefendant Nicholas Williams entered the home of Tierrah Adams and assaulted Brandon Rigler, who was making repairs to the home as a favor to Adams. Defendant and Williams were tried together, and Williams was convicted of first-degree home invasion, AWIGBH, and felonious assault. Williams separately appealed his convictions in *People v Williams*, unpublished per curiam opinion of the Court of Appeals, issued August 11,2026 (Docket No. 370533). We adopt the statement of facts in that case and expand our discussion of the record as necessary to address defendant's claims in this case.

## II. SUFFICIENCY OF THE EVIDENCE: FIRST-DEGREE HOME INVASION

Defendant contends that the prosecutor presented insufficient evidence that he committed first-degree home invasion. We disagree.

"We review de novo a challenge to the sufficiency of the evidence." *People v Ventour*, 349 Mich App 417, 425; 27 NW3d 660 (2023). "When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt." *Id*.

The jury convicted defendant of first-degree home invasion under MCL 750.110a(2), which provides as follows:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

On the basis of MCL 750.110a(2), this Court set forth the following elements that a prosecutor must prove to establish first-degree home invasion:

> (1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling. [*People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016).]

Defendant only challenges the third element, arguing that the prosecution presented insufficient evidence that when he entered Adams's home, he was armed with a dangerous weapon or that Rigler was lawfully present in the home.

## A. ARMED WITH A DANGEROUS WEAPON

This Court has defined "dangerous weapon" as follows:

> Some weapons carry their dangerous character because so designed and are, when employed, per se, deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose. The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous. The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by act, and the instrumentality is adapted to

accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a dangerous weapon. [*People v Lange*, 251 Mich App 247, 256; 650 NW2d 691 (2002) (quotation marks, citations, and emphasis omitted).]

Metallic knuckles and "similar articles" are dangerous weapons per se, but other objects may become dangerous weapons "when they are used or carried for use as weapons." *Id*. (quotation marks and citation omitted).

Rigler testified that Williams and defendant began punching him immediately upon entering Adams's home where Rigler was cleaning, installing drywall, and doing plumbing work. Defendant had a shiny metal object in his hand when he was punching Rigler. Because the attack was both sudden and initially focused on Rigler's head and face, Rigler could not identify the object that defendant was holding, but he referred to it as a "fist pack" because defendant's punches felt heavy. Berrien County Sherriff's Deputy Benjamin Eberly testified that, in his experience, the injuries that Rigler sustained, including two bone fractures in his jaw, a fractured nasal bone and eye socket, and broken teeth, are not typical without the use of a weapon. Deputy Eberly further testified that defendant could have used a weapon like brass knuckles because Rigler described the shiny metal object in defendant's hand, and because defendant did not appear to sustain any injuries to his hand despite causing extensive damage to Rigler's face and head. Dr. Paul Judge, who was defendant's treating surgeon, testified that numerous medical problems could result from the injuries that Rigler sustained, including meningitis, encephalitis, and death.

When considering a claim regarding the sufficiency of evidence, "we must draw all reasonable inferences and make all credibility assessments in favor of the jury's verdict." *People v Darga*, 349 Mich App 1, 10; 27 NW3d 298 (2023). Moreover, it is well settled that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citations omitted). The circumstantial evidence and reasonable inferences arising from that evidence were sufficient to establish that defendant brought a dangerous weapon into the home and used it to assault Rigler. The evidence showed that defendant used either metallic knuckles or an object similarly designed or adapted for the purpose of inflicting serious injury beyond what would ordinarily be possible with a bare fist. The prosecution therefore presented sufficient evidence for a jury to convict defendant of first-degree home invasion under the theory that he was armed with a dangerous weapon in violation of MCL 750.110a(2)(a).

## B. RIGLER'S LAWFUL PRESENCE IN DWELLING

The prosecution also presented sufficient evidence to establish that Rigler was lawfully in Adams's home when defendant entered. See *Bush*, 315 Mich App at 244. Rigler testified that he arranged with Adams through phone calls and text messages to enter her home to perform construction work on the trailer. This was supported by evidence that Adams left the door open for him to enter the home and that she left a key on a counter for him, knowing that he needed to make trips to and from the residence to drop off supplies, take his son to his mother's house, and buy food and materials. Rigler further testified that Adams agreed that he could spend the night in her home to get all the drywall work done. Although Adams denied giving anyone permission to enter her home, she also made various contradictory and inconsistent statements to the police

and at trial about her ability to communicate with Rigler, her memory of her agreement with Rigler, and their plan for Rigler to perform work at her home.

Again, we must make all credibility assessments in favor of the jury's verdict that defendant was guilty of first-degree home invasion. See *Darga*, 349 Mich App at 10. The jury plainly could have found Rigler's testimony more credible than Adams's testimony about whether he had permission to be in her home, especially considering that Adams was codefendant Williams's fiancée at the time of trial and may have been biased in his favor. A jury could reasonably infer from Rigler and Adams's phone and text conversations that Rigler was lawfully in the home when defendant entered and attacked him. For these reasons, defendant's argument that insufficient evidence supported his conviction of first-degree home invasion lacks merit. See *Ventour*, 349 Mich App at 425.

### III. OPINION TESTIMONY

Defendant next argues that it was improper for Deputy Eberly to testify that the shiny object that Rigler described could have been brass knuckles. We disagree.

Defendant never objected to the testimony at trial, so this evidentiary issue is not preserved. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "Unpreserved evidentiary issues are reviewed for plain error affecting substantial rights." *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022).

MRE 701 governs the admission of lay opinion testimony, and, at the time defendant was tried, it provided as follows:[1]

> If the witness is not testifying as an expert, the witness' [sic] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Defendant maintains that Deputy Eberly's testimony that Rigler's injuries were consistent with being hit by brass knuckles "or another object" was improper because it was "the sole province of the jury to judge and determine the ultimate issue of the defendant's guilt." Defendant is correct that "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). But Deputy Eberly did not testify about his opinion of defendant's guilt or innocence. He merely testified about his perception of what could have caused Rigler's injuries in light of Rigler's description of a shiny metal object in defendant's hand. He never stated that defendant was guilty, and he never opined that using brass knuckles or a similar object would satisfy the elements of first-degree home invasion or AWIGBH. In accordance with MRE 701, his testimony was rationally based on his

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

experience as an investigative police officer, and it was helpful for the jury's determination of a fact at issue: whether defendant was armed with a dangerous weapon. Defendant has not established plain error with respect to this evidentiary decision.[2] See *Lowrey*, 342 Mich App at 108.

## IV. HABITUAL-OFFENDER NOTICE

Defendant next argues that he is entitled to resentencing because the prosecutor failed to provide timely notice that he could be sentenced as a second-offense habitual offender. Again, we disagree. Because defendant failed to preserve this issue by raising it in the trial court, we review this issue under the plain-error rule. See *People v Marshall*, 298 Mich App 607, 625-626; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013).

Defendant was sentenced as a second-offense habitual offender under MCL 769.10. The prosecutor must provide notice of his or her intent to seek this sentencing enhancement:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense. [MCL 769.13(1).]

See also MCR 6.112(F)

The prosecutor filed a felony warrant on December 12, 2022, and defendant was arrested on December 17, 2022. Defendant was arraigned on the warrant at the district court on December 19, 2022. Defendant's preliminary examination occurred on January 3, 2023, and defendant was bound over to the Berrien Circuit Court on the felony charges. Also on January 3, 2023, defense counsel waived the filing and reading of the felony information. Pursuant to MCR 6.113(C), defendant also waived his circuit court arraignment on the information and entered a not-guilty plea. On January 13, 2023, the prosecutor filed the felony information containing the second-offense habitual-offender notice in the circuit court. That same day, the prosecutor also filed proof of service indicating that "copies of the Information containing supplemental charges and witness list" were served on defense counsel.

Contrary to defendant's argument, the plain language of MCL 769.13 states that the timing of the habitual-offender notice is measured from a defendant's "arraignment on the information" under MCR 6.113, not the arraignment on the complaint or warrant. As the procedural history of this case makes clear, the prosecutor's notice of intent to seek an enhanced sentence was timely filed and served under MCL 769.13(1) because the filing and service occurred 10 days after

---

[2] Because we hold that the challenged testimony was admissible, defendant's argument that his defense counsel was ineffective for failing to object to the testimony necessarily fails. See *People v Erickson*, 288 Mich App 192, 205; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

defendant waived his arraignment on the information (and on the same day as the filing of the information following the waiver of arraignment on the information), which was within the 21-day period stated in the statute. Defendant has not shown plain error, and defendant is not entitled to resentencing on this basis. See *Marshall*, 298 Mich App at 625-626.

## V. OFFENSE VARIABLE SCORING

Defendant also argues that the trial court erred when it assessed Offense Variable (OV) 1 at 10 points instead of 5 points.

This Court explained our standards of review for claims of OV scoring errors as follows:

> This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings. We review de novo issues of statutory construction. Clear error exists when this Court is left with a definite and firm conviction that a mistake was made. Under the sentencing guidelines, the circuit court's factual determinations must be supported by a preponderance of the evidence. [*People v Teike*, 348 Mich App 520, 525-526; 19 NW3d 733 (2023) (quotation marks, citations, and ellipsis omitted).]

"OV 1 considers the aggravated use of a weapon during the commission of a crime." *Ventour*, 349 Mich App at 434. The trial court should assess 10 points for OV 1 if the victim was "touched by" a weapon, but it should assess 5 points if the weapon was only "displayed or implied." MCL 777.31(d) and (e).

Defendant argues that OV 1 should have been scored at 5 points because although codefendant Williams displayed a knife during the assault, Rigler was never cut by the knife, and there was insufficient evidence to show that defendant used brass knuckles or any other weapon against Rigler. But as we have explained, there was a significant amount of testimony that defendant likely used brass knuckles or some other metal object when he punched Rigler. The trial court did not clearly err by finding, consistent with the trial testimony and the jury's verdict, that defendant was holding a metal object like brass knuckles that he used to exacerbate Rigler's injuries. For these reasons, the trial court correctly assessed OV 1 at 10 points.[3]

## VI. STANDARD 4 BRIEF

Defendant raises several arguments in a pro se supplemental brief filed pursuant to Administrative Order No. 2004-6, 471 Mich c, cii (2004).

---

[3] Defendant also argues that defense counsel was ineffective for failing to object to the trial court's scoring decision. But the record reflects that defense counsel argued at sentencing that the trial court should assess OV 1 at 5 points, so no error by counsel is apparent on the record. See *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

In *People v Spaulding*, 332 Mich App 638, 655-656; 957 NW2d 843 (2020), this Court described the standard of review for a claim of ineffective assistance of counsel:

> Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. Constitutional questions of law are reviewed de novo, while findings of fact are reviewed for clear error. This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record. Counsel is presumed to have been effective, and a defendant has the burden of establishing that counsel was not effective. Thus, defendant must show that counsel's performance was objectively unreasonable and that counsel's deficient performance is reasonably likely to have affected the outcome of the proceedings. [Quotation marks and citations omitted.]

Defendant failed to preserve most of his ineffective-assistance claims because he did not move for a new trial or evidentiary hearing in the trial court or move this Court to remand for an evidentiary hearing. Defendant included in his Standard 4 brief a request that we remand for an evidentiary hearing with respect to his claim that defense counsel was ineffective for failing to investigate and hire experts, but he did not accompany that request with an affidavit or other offer of proof to demonstrate what additional facts he would expect to establish at an evidentiary hearing. See MCR 7.211(C)(1)(a) ("A motion [to remand] under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing."). Accordingly, we deny defendant's motion to remand for an evidentiary hearing, and we review all ineffective-assistance claims for mistakes apparent on the record. See *Spaulding*, 332 Mich App at 656; *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

### 1. JOINT TRIAL

Defendant argues that defense counsel denied him the effective assistance of counsel by failing to move for separate trials, failing to move for separate juries, and failing to appeal the trial court's grant of the prosecutor's motion to join Williams' and defendant's trials under MCR 6.121. We disagree.

We note that although defense counsel did not request an interlocutory appeal of the trial court's order joining the trials, she did oppose the prosecutor's motion. She argued that if Williams testified, then the prosecutor could reopen the proofs and offer his testimony against defendant. She also argued that a joint trial would cause juror confusion because defendant and Williams had separate and distinct defenses and because Williams was charged with the additional crime of felonious assault, MCL 750.82. At a hearing on the motion for joint trials, the prosecutor noted that Williams and defendant intended to present the same alibi defense: they were together at the home of Williams's father at the time of the offense. Defense counsel also argued that a joint trial would prejudice both defendants because she did not know whether their defenses might conflict in the future and because the jury might find defendant "guilty by association" with Williams. The trial court ruled that conducting a joint trial would conserve resources, that the case was not so complex that joinder might confuse the jury, that defendant and Williams allegedly acted together

to commit the crimes, and that both Williams and defendant planned to use the same witness to establish the same alibi. It ruled that defendant and Williams did not show that conducting one trial would prejudice them or affect their substantial rights, and it granted the prosecutor's motion to join the cases for trial.

Defendant's pro se claim that he should have had a separate trial is premised, in part, on his framing of the evidence presented at trial in a manner that is not supported by the record. Contrary to defendant's assertions, no evidence showed that Rigler initiated the attack when Williams entered the trailer. Rather, the only evidence on this issue showed that (1) Rigler tried to push Williams back out the door after Williams entered the residence without permission while wearing a hood and a mask fashioned from a bandana, and (2) defendant, in the same disguise, helped force Rigler back into the trailer and proceeded to attack him. Defendant further asserts that Rigler initially reported that only Williams attacked Rigler. But the record plainly reflects that, while receiving emergency treatment for numerous brutal injuries, Rigler told the police that two men attacked him, and he named Williams immediately. Rigler stated that he also knew the other assailant, but he could not remember defendant's name. The next day, and without prompting, Rigler told Deputy Eberly defendant's name and said that defendant lived next door to Williams.

Although defendant argues that separate trials "could have" allowed defendant to file motions to exclude evidence that Williams would not have been allowed to exclude, he fails to identify that evidence or explain why the trial court would have excluded it or how it may have affected the outcome of his trial. We construe the pleadings of parties *in propria persona* with more generosity and lenity than those filed by lawyers, but pro se parties are not excused from supporting their claims and arguments. *Estelle v Gamble*, 429 US 97, 106; 97 S Ct 285; 50 L Ed 2d 251 (1976). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (quotation marks and citation omitted).

Defense counsel argued in the trial court that defendant and Williams should be tried separately, but considering defendant's failure to offer any explanation of the merits of his argument on appeal, he has not shown that defense counsel's performance was deficient or that, but for counsel's deficient performance, there was a reasonable probability that the outcome of the trial would have been different. See *Spaulding*, 332 Mich App at 656.

## 2. FAILURE TO INVESTIGATE AND HIRE EXPERTS

Defendant also contends that defense counsel was ineffective for failing to adequately investigate the case and failing to hire an expert to testify about Rigler's injuries. We disagree.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *Payne*, 285 Mich App at 190. But the failure to call a witness can constitute ineffective assistance of counsel if it could have affected the outcome of the trial. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Furthermore, defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular

-8-

investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted).

Defendant's argument that defense counsel failed to adequately investigate Rigler's claim that defendant held a fist-loaded weapon when entering Adams's home is premised on his erroneous legal assertion that the prosecutor could not charge him with—and the jury could not convict him of—first-degree home invasion without evidence that he was armed with a dangerous weapon. However, MCL 750.110a(2) states that a defendant is guilty of first-degree home invasion if the defendant was *either* armed with a dangerous weapon *or* the victim was lawfully in the home. As discussed, the prosecutor presented sufficient evidence at trial to prove both that Rigler was lawfully in the home and that defendant was armed with a dangerous weapon. Therefore, defendant's ineffective-assistance claim necessarily fails because even if defendant could show that defense counsel did not adequately investigate defendant's possession of a dangerous weapon (which is not apparent from the record), defendant cannot show that, but for counsel's deficient performance, there was a reasonable probability that the outcome would have been different. See *Spaulding*, 332 Mich App at 655-656. Even if defense counsel had successfully requested that the trial court exclude evidence that defendant had a dangerous weapon or had presented overwhelming evidence that he did not possess such a weapon, the evidence still showed that Rigler was lawfully inside Adams's home, which was enough to charge and convict defendant of first-degree home invasion under MCL 750.110a(2)(b).[4]

Defendant also argues that defense counsel provided ineffective assistance by failing to hire a medical expert to challenge testimony from the prosecutor's medical expert, Dr. Judge, who made surgical repairs to Rigler's jaw with screws and titanium plates and also diagnosed Rigler with broken orbital and nasal bones. Defendant opines that "both defense counsels knew there was a doctor being called to testify [and] either could have scheduled an interview with the expert and if they disagreed with the opinion, they had plenty of time to obtain a second opinion and even provide a witness list with a defense expert to challenge the prosecution['s] theory . . . ." But defendant himself characterizes Dr. Judge's testimony as favorable to his defense because it "[b]asically clarif[ied] that Mr. Rigler was not showing symptoms or signs of any serious danger to his health or bodily function,"[5] which he erroneously claims is a required element for an

---

[4] Defendant also claims that defense counsel was ineffective for failing to hire a private investigator because Deputy Eberly did not inspect the inside of Adams's home and because Williams's knife "disappeared" during the crime. Defendant does not explain or make an offer of proof to show what a private investigator would have discerned about Williams's possession of a knife or how that investigation would assist his defense, especially given that no one testified that defendant was carrying the knife. For these reasons, defendant has failed to meet his burden of establishing the factual predicate for his claims and has not shown that further factual development would support his position. See *People v Thurmond*, 348 Mich App 715, 741; 20 NW3d 311 (2023).

[5] Defendant overlooks Dr. Judge's testimony that facial injuries like Rigler's could lead to other complications, including meningitis, encephalitis, and death.

AWIGBH conviction.[6] As discussed in the next section, an AWIGBH conviction does not require the prosecutor to prove any injury to the victim. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). Defendant does not articulate what "second opinion" defense counsel should have obtained, let alone how that second opinion would have affected the outcome of his case. Defense counsel likely saw no need to hire a medical expert because the extent of Rigler's injuries was not seriously in dispute. Defendant has not overcome the strong presumption that defense counsel's decision not to call an expert to testify about Rigler's injuries was a matter of sound trial strategy, so he is not entitled to relief on this claim. See *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018).

## B. SUFFICIENCY OF THE EVIDENCE: AWIGBH

Defendant argues that the prosecutor presented insufficient evidence to establish the elements of AWIGBH. We disagree. We review a claim regarding the sufficiency of the evidence de novo and "view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt." *Ventour*, 349 Mich App at 425. The prosecutor charged defendant with AWIGBH under MCL 750.84(1)(a), which requires the following elements: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Stevens*, 306 Mich App at 628 (quotation marks and citation omitted). The *Stevens* Court further expanded on the intent requirement:

> The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature. . . . Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent. Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats. Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent. [*Id*. at 628-629 (quotation marks and citations omitted).]

As discussed, Rigler identified defendant and Williams as his attackers and testified that they entered the home, taking him by surprise, and acted together to repeatedly punch him. Rigler also testified that he sustained various injuries and that defendant used a weapon to increase the severity of his blows to Rigler's face and head. Other witnesses testified about the severity of defendant's injuries and his need for surgery and a lengthy period of rehabilitation. The evidence that defendant used a dangerous weapon in a coordinated attack against Rigler in which he and Williams inflicted severe injuries indicated that defendant assaulted Rigler with the intent to cause great bodily harm less than murder. See *id*. at 629. Therefore, there was sufficient evidence to support defendant's AWIGBH conviction.

---

[6] As discussed in the next section, an AWIGBH conviction does not require the prosecutor to prove any injury to the victim. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

## C. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues that he is entitled to a new trial because the jury's verdict was against the great weight of the evidence.

"We review a great-weight challenge by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 341 Mich App 272, 276-277; 989 NW2d 832 (2022) (quotation marks and citation omitted). This is a very high standard to reach:

> Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial. Absent exceptional circumstances, issues of witness credibility are for the trier of fact. Generally, a verdict is against the great weight of the evidence only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. [*Id*. at 277 (quotation marks and citations omitted).]

Defendant argues that there were inconsistencies between Rigler's trial testimony and a Lakeland Hospital record, a statement by a doctor in Deputy Eberly's police report, and Rigler's testimony at the preliminary examination. But the police report and hospital records were not admitted at trial, so they cannot establish that the evidence at trial preponderated against the jury's verdict. See *id*. Defendant also maintains that a better view of the evidence is that Rigler was intoxicated on the night of the crimes—Rigler initiated the attack on Williams, defendant came to Williams's aid, and they were wearing face coverings because of the cold November weather. But the mere fact that one could envision an innocent explanation for the altercation does not justify reversal. As discussed at length throughout this opinion, abundant evidence instead showed that defendant and Williams entered Adams's home to physically attack Rigler while he was present with Adams's permission. Some conflicting testimony was presented at trial and both Rigler's and Adams's credibility were disputed, but those circumstances are not sufficient grounds to establish a claim that a verdict was against the great weight of the evidence. See *id*.

## VII. CONCLUSION

There was sufficient evidence to support defendant's convictions of both first-degree home invasion and AWIGBH, and the jury's guilty verdicts were not against the great weight of that evidence. Because Deputy Eberly's testimony about brass knuckles was admissible and there was no evidence of defense counsel's allegedly deficient performance apparent on the record, defendant was not denied the effective assistance of counsel. Defendant is also not entitled to

-11-

resentencing because the prosecutor properly filed and served notice of her intent to seek a habitual-offender enhancement and because the trial court properly scored OV 1.

Affirmed.

/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin